IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JIMMY VIVERETTE, | ) | |
| No. M35784, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-00717-NJR |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| C. BROOKS, | ) | |
| UNKNOWN PARTY NURSE JANE DOE, | ) | |
| JAMES TRAVIS, | ) | |
| N. BAKER, and | ) | |
| STEVE DUNCAN, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jimmy Viverette is an inmate currently housed in Lawrence Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to the denial and/or delay in providing him medical treatment.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted

if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, on December 21, 2014, Plaintiff was playing basketball when he heard a pop from the back of his leg. He was unable to walk and asked a guard for help. Nurse C. Brooks came out with a wheelchair and took Plaintiff back to the health care unit. Plaintiff told Nurse Brooks what happened; she completed an injury report, noting that follow-up with a physician's assistant ("PA") was needed, but on a separate assessment form she indicated no referral to a doctor was necessary, only referral to a PA. Nurse Brooks told Plaintiff that he had torn a muscle—a medical decision formed without input from a physician. In any event, Nurse Brooks did not inform the head doctor, Dr. Coe, that plaintiff had a torn muscle. She also made Plaintiff hop back to his cell. Nurse Brooks never arranged for a follow-up exam, so Plaintiff was left in pain and without treatment.

Plaintiff submitted his own written request(s) for medical care; a month after his injury he was seen by Nurse Jane Doe. That nurse asked why Plaintiff was just then informing the health care unit about his injury. Plaintiff explained that he had been seen by Nurse Brooks. Nurse Doe gave Plaintiff Motrin and said she would arrange for Plaintiff to be seen by the PA. Plaintiff had to wait an additional three days until he was seen by PA Travis. The PA observed that Plaintiff had Achilles tendon pain. No x-rays were taken, and nothing was done to relieve his pain. A follow-up exam was ordered, but he was not seen by anyone.

On March 18, 1015, Plaintiff was seen by Nurse N. Baker. Baker scheduled Plaintiff to see the PA a few days later, on March 23. After examining Plaintiff, the PA arranged for Plaintiff to see Dr. Coe.

On March 30, 2015, three months after his injury, Plaintiff finally saw a doctor. Dr. Coe ordered an ultrasound exam. On April 3, Plaintiff was given a splint and boot. He was also approved for an orthopedic consultative exam. Plaintiff saw the orthopedist on May 12, and on May 26, Plaintiff's Achilles tendon was surgically repaired.

Plaintiff attributes the delay and lack of treatment to negligence and a policy and practice of requiring inmates to be seen by a nurse on three occasions before being seen by a physician. He also indicates that his injury was sufficiently obvious and that he should have been immediately seen by a physician.

Wexford Health Sources, Inc., Nurse C. Brooks, Nurse Jane Doe, Physician's Assistant James Travis, Nurse N. Baker, and Warden Steve Duncan are all sued in their official and individual capacities. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief from Warden Duncan. Plaintiff demands a change in the health care unit's policy and practice of having inmates see a nurse three times, and for injured inmates to be placed on the first available physician's call line.

Based on the allegations in the complaint, the Court finds it convenient to frame the *pro se* action into the following overarching claim.

> **Count 1: Defendants Wexford Health Sources, Inc., Nurse C. Brooks, Nurse Jane Doe, Physician's Assistant James Travis, and Nurse N. Baker were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment; Warden Duncan is a defendant in his official capacity for purposes of injunctive relief.**

**Discussion**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Thus, at this early juncture, Plaintiff's tendon injury and resulting pain appear sufficiently serious to implicate the Eighth Amendment.

Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior, the equivalent of criminal recklessness must ultimately be proved. *Farmer v. Brennan,* 511 U.S. 825, 835-37 (1994). Thus, insofar as Plaintiff characterizes the medical defendants' behavior as negligent, he has failed to state a claim, and those claims will be dismissed.

A medical professional is entitled to deference in treatment decisions unless "no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir.1998). As described in the complaint and as asserted by Plaintiff, the seriousness of his injury was obvious, yet there was a three month delay before an ultrasound was performed and he was seen by a physician.

Similarly, despite continued complaints of pain, Plaintiff was just given more Motrin. This, arguably could be considered deliberate indifference. Therefore, the complaint states a colorable Eighth Amendment claim against the medical professionals who cared for Plaintiff: Nurse C. Brooks, Nurse Jane Doe, Physician's Assistant Travis, and Nurse N. Baker.

Two defendants warrant further discussion: Wexford Health Sources, Inc., and Warden Steve Duncan. Relative to Wexford Health Sources, Inc., a corporate healthcare provider cannot be held liable for its employees' constitutional violations simply because it is the employer. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014); *Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013) (no *respondeat superior* liability for private corporation). The corporation can be liable, however, if the plaintiff's harm is caused by its unconstitutional policy or practice. *See Shields*, 746 F.3d at 796; *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004). Although Wexford is listed in the caption of the complaint, it is not mentioned in the narrative of the complaint. Wexford is only described as the company that provides doctors and nurses for the Illinois Department of Corrections. Consequently, no claim has been stated against Wexford, and it will be dismissed without prejudice.

With respect to Warden Duncan, a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. But because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Accordingly, a warden, for example, cannot face liability merely because he is the chief administrative officer of the prison.

In any event, the complaint specifies that Warden Duncan is being sued for purposes of securing any injunctive relief that may be ordered. A warden, in his official capacity, is the proper defendant for purposes of injunctive relief. *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011); *Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001). Accordingly, Warden Duncan is dismissed in his individual capacity, but he shall remain a defendant in his official capacity for purposes of injunctive relief only. Injunctive relief is also the only remedy available against Warden Duncan because the Eleventh Amendment bars official capacity claims for monetary damages. *Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005).

On a related note, although a policy and practice is discussed in the complaint, it is not attributed to any of the defendants. Therefore, there is no basis for an official capacity claim against *any* of the defendants. With the exception of Warden Duncan, all official capacity claims will be dismissed.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Defendant **WEXFORD HEALTH SOURCES, INC.**, is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that all negligence claims asserted under 42 U.S.C. § 1983 are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1**, the Eighth Amendment claim, shall otherwise **PROCEED** against Defendants **NURSE C. BROOKS, PHYSICIAN'S ASSISTANT JAMES TRAVIS, UNKNOWN PARTY NURSE JANE DOE, and NURSE N. BAKER** in their individual capacities only; all official capacity claims against them are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Defendant **WARDEN STEVE DUNCAN** shall remain a defendant in his official capacity only, for purposes of injunctive relief; all individual capacity claims against him are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants **NURSE C. BROOKS, PHYSICIAN'S ASSISTANT JAMES TRAVIS, NURSE N. BAKER, and WARDEN STEVE DUNCAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Service shall not be made on **UNKNOWN PARTY NURSE JANE DOE** until such time as Plaintiff has identified him/her by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 24, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**